33 Md. App. 46 (1976)
363 A.2d 642
DEVEROE R. LYLE ET UX.
v.
TRI-COUNTY FEDERAL SAVINGS AND LOAN ASSOCIATION OF WALDORF.
No. 1334, September Term, 1975.
Court of Special Appeals of Maryland.
Decided September 20, 1976.
The cause was argued before MARVIN H. SMITH and JOHN C. ELDRIDGE, Associate Judges of the Court of Appeals, and JOSEPH M. MATHIAS, Associate Judge of the Sixth Judicial Circuit, all specially assigned.
George E. Meng, with whom were Pitrof & Starkey on the brief, for appellants.
Joseph Ernest Bell, II, for appellee.
*47 SMITH, J., delivered the opinion of the Court.
Appellants, Deveroe R. Lyle et ux. (the Lyles), sought, unsuccessfully, in the Circuit Court for Charles County to recover from appellee, Tri-County Federal Savings and Loan Association of Waldorf (Tri-County), allegedly usurious interest and other charges. For reasons to be stated, we are of the opinion that the interest charges were usurious and, therefore, we hold that part of the determination by the trial court to be in error.
The facts are relatively simple. The Lyles desired to construct a home in Prince George's County. They obtained a loan commitment from Tri-County. They executed a note to Tri-County in the amount of $60,000 bearing interest at 8%. Payment of the note was secured by a deed of trust of the same date which referred to the note. On the same day a loan agreement was executed. It recited that the Lyles owned a lot "upon which said land [Tri-County] ha[d] [t]heretofore agreed to loan the sum of ... $45,000.00 ... to be secured by the Deed of Trust [t]hereinabove mentioned, and the said money to be so loaned to be used in improving the said land by the erection thereon of a dwelling...." The dwelling was to be completed within 12 months. Provision was made for payment by Tri-County of the $45,000 in 9 installments as work progressed. At settlement Tri-County's check in the amount of $60,000 was presented to and endorsed by the Lyles. The settlement sheet reflects disbursal of $15,000 from the loan proceeds to the seller of the lot. The remaining balance of $45,000 of the loan proceeds was paid over to Tri-County. The president and "managing officer of Tri-County" testified that this sum "was deposited to an account maintained by Tri-County at the Bank of Southern Maryland." He said it went into that bank "along with all the other moneys that was taken in by Tri-County on April 15th, 1974, which totaled $82,158.96." No escrow account was maintained. Tri-County did maintain a record of "loans in process" and the balance kept on hand in its account was said to always be equal to or greater than the total amount committed to loans. The account was used for such things as payment of employees' *48 salaries and other monthly expenses of Tri-County. Also collected at settlement and paid over to Tri-County was $60 for an appraisal fee, $10 for a credit report, and $90 for nine inspection fees in accordance with the schedule in the loan agreement. The credit report and appraisal fees were disbursed by Tri-County to other parties. The house was not constructed as planned and the $90 sum for inspection fees ultimately was returned to the Lyles. The Lyles abandoned their construction plans and settled with Tri-County on September 24, 1974, repaying the $15,000 at that time plus $573.29 accrued interest on the full $60,000. At the same time they were given credit for the $45,000 retained. Interest had been paid in the interim in accordance with the schedule originally agreed upon. This interest was at all times on the full $60,000.
The Lyles brought suit claiming that Tri-County "charged and collected from [them] usurious interest and fees of $1,633.83" and that under Maryland Code (1957, 1972 Repl. Vol.) Art. 49, § 8 they were "entitled to three times the amount of interest and charges collected on any loan in excess of the interest and other charges authorized by that Article, or the sum of $500.00, whichever is greater...." The trial judge found the fees "not [to be] a payment of interest over and above the eight per cent allowed by law." He noted that the $45,000 "was deposited in the bank, admittedly deposited with other funds," and that the testimony of the president of Tri-County "was that there is a general ledger which controls, which they use to control the funds that are put in the bank and that they retain sufficient funds in several banks to cover all outstanding construction loans which are in progress ... at any given time." He concluded:
"So the Court, gentlemen, feels that the commitment was made, the testimony shows that the funds were available for the benefit of Mr. and Mrs. Lyle, in accordance with their agreement. They agreed that the funds were to be retained by the lending institution in accordance with their agreement and there is nothing that I can find in *49 any statute in the State of Maryland, which prevents the individual from entering into this agreement authorizing the lending institution to make such disbursal of funds as, for which they had signed the deed of trust.
"The Court, for that reason, will grant the motion and will enter a verdict, enter a judgment nisi in favor of the defendant."
Two questions are presented on this appeal: (1) whether the credit, appraisal, and inspection fees were interest and thus usurious; and (2) whether the charging of interest by Tri-County on the full amount of the loan from the date of settlement while holding $45,000 in its own account was usury under Maryland law.

i

The Law
Maryland Constitution Art. III, § 57 provides, "The Legal Rate of Interest shall be Six per cent. per annum; unless otherwise provided by the General Assembly." (Emphasis in the Constitution.) The background and history of usury statutes was traced for the Court of Appeals by Judge Delaplaine in Plitt v. Kaufman, 188 Md. 606, 610-12, 53 A.2d 673 (1947). It is important to remember that the statute in effect in Maryland at that time and for most of the years since adoption of the constitutional provision was far different from the statute in effect today. Maryland Code (1957) Art. 49, § 3, originally enacted by chapter 69 of the Acts of 1704, defined usury as "exact[ing], directly or indirectly, for loan of any money, goods or chattels to be paid in money above the value of six dollars for the forbearance of one hundred dollars for one year, and so after that rate for a greater or lesser sum, or for a longer or shorter time...." This law was changed by the enactment of Chapter 453 of the Acts of 1968, codified as Code (1957, 1972 Repl. Vol.) Art. 49, §§ 1-11. Interest is defined by § 1, with certain charges not considered interest, while § 3 provides that "[i]nterest may be charged not in excess of the *50 rate of six percent (6%) per annum simple interest on the unpaid balance, except that interest may be charged at the rate not in excess of eight percent (8%) per annum simple interest on the unpaid balance under an agreement in writing between the lender and the borrower." (Emphasis added.)[1] By § 6 usury is defined as "the collection by a lender of either interest or other charges in amounts greater than allowed by ... [A]rticle [49]."
In B.F. Saul Co. v. West End Park, 250 Md. 707, 246 A.2d 591 (1968), the Court of Appeals considered § 1 (b) (6) (C) exempting from consideration as interest "[a]ctual expenses collected by the lender ... [f]or ... costs not retained by the lender ... in connection with the loan." Judge Finan observed for the Court:
"We adopt the lower court's classification of specific items as set forth in its order.... The main thrust of the lower court's rationale is that the determining factor, in the event of any ambiguity as to whether or not a fee or charge should be included as interest, is whether such charge is retained by the lender and, if so, it should be treated as interest. That such a construction is a projection of the intent of the Legislature becomes manifest upon reading the Act." Id. at 723.
To like effect see Equitable v. Insurance Comm'r, 251 Md. 143, 148, 246 A.2d 604 (1968).
In Plitt Judge Delaplaine said for the Court:
"This Court has held that no device or subterfuge of the lender will be permitted to shield him in taking more than the legal interest on a loan. In whatever part of the transaction usury may lurk, or in whatever form it may take, or under whatever guise the lender may attempt to evade the law, the *51 court will seek to ascertain what the contract actually was between the parties and give the debtor relief. Andrews v. Poe, 30 Md. 485 [(1869)]; Brenner v. Plitt, 182 Md. 348, 34 A.2d 853 [(1943)]." Id. at 611.

ii

Credit Report, Appraisal Fee and Inspection Fees
Neither the charge for the credit report nor that for the appraisal fee was retained by Tri-County. It is clear from the evidence that the inspection fee would have been disbursed to the person making the inspection had the Lyles proceeded with their building. The fee was in fact refunded to the Lyles. Thus, under the holding in West End we are of the opinion that these charges are not usurious.

iii

Collecting Interest on the Sum Retained by Tri-County
Tri-County relies upon Bettum v. Mont. Fed. S. & L. Ass'n, 262 Md. 360, 277 A.2d 600 (1971). That case is factually inapposite. As Judge Singley pointed out for the Court of Appeals in that case, the statute under which we here consider the question of usury "did not become effective until 1 July 1968, more than two years after Montgomery Federal made its loan." Moreover, there "both parties seemingly concede[d] that the controversy [was] controlled by the law of the District of Columbia, where the mortgaged property [was] located and the loan was made...."
We see this case as one of statutory interpretation. Because of the peculiarities of the Maryland statute, cases from other jurisdictions are of little help.
Cases abound in Maryland in which the Court of Appeals has stated that the cardinal rule of statutory construction is to ascertain and carry out the real legislative intent and that in ascertaining that intent the Court considers the language of an enactment in its natural and ordinary signification. See, e.g., Gillespie v. R & J Constr. Co., 275 Md. 454, 457, 341 A.2d 417 (1975), and cases there cited.
*52 We regard the significant language in the statute here to be that which we emphasized in our earlier quotation, that interest is to be calculated "on the unpaid balance." Webster's New International Dictionary (2d ed. 1959) says of `balance":
"7. a An equality between the sums total of the two sides of an account.
* * *
"b The excess on either side, or the difference between the two sides, of an account."
The Compact Edition of the Oxford English Dictionary (1971) states by way of a definition:
"17. The process of finding the difference, if any, between the Dr. and Cr. sides of an account, or set of accounts; the exhibition of this process in a tabular form; the result so ascertained or exhibited.
* * *
"b. esp. To strike a balance: to determine the exact difference, if any, between the two sides of an account or set of accounts. lit. and fig.

"c. gen. A comparative reckoning. rare.

"18. An equality between the total of the two sides of an account, when added up, after making all entries on both sides....
* * *
"19. The difference between the Dr. and Cr. sides of an account, or set of accounts.
* * *
"b. Balance (of indebtedness): the difference between the total amounts which two persons, societies, or nations mutually owe each other." (Emphasis in original.)
The term is defined in The Random House Dictionary of the English Language (1967):
"10. Accounting. a. equality between the totals of *53 the two sides of an account. b. the difference between the debit total and the credit total of an account. c. unpaid difference represented by the excess of debits over credits. 11. an adjustment of accounts."
The American College Dictionary (1964) states:
"8. U.S. the remainder or rest. 9. Com. a. equality between the totals of the two sides of an account. b. difference between the debit total and the credit total of an account. c. unpaid difference represented by the excess of debits over credits. 10. an adjustment of accounts."
Black's Law Dictionary (4th ed. 1957) states relative to "balance":
"BALANCE. An equality between the sums total of the two sides of an account, or the excess on either side. Jones v. Marrs, 114 Tex. 62, 263 S.W. 570, 574.
"The conclusion or result of the debit and credit sides of an account. It implies mutual dealings, and the existence of debt and credit, without which there could be no balance. Thillman v. Shadrick, 69 Md. 528, 16 Atl. 138. The amount remaining due from one person to another on a settlement of the accounts involving their mutual dealings; the difference between the two sides (debit and credit) of an account.
"Often used in the sense of residue or remainder, and, in a general sense, may be defined as what remains or is left over. Commercial Discount Co. v. Holland, 107 Cal. App. 83, 289 P. 906, 908."
5 Words and Phrases, "balance" 132, 133 (1968) is consistent with the above definitions.
In Thillman v. Shadrick, 69 Md. 528, 16 A. 138 (1888), cited by Black, the question presented was whether a statement filed with a declaration in assumpsit "complied with the *54 provisions of sec. 171 of the Act of 1886 in respect to filing an account, or a sufficient statement of the particulars of the [defendant's] alleged indebtedness as to entitle him, the [plaintiff], to a judgment by default under that statute." The account filed referred simply "[t]o a balance due on the purchase money of [certain] houses...." The statute required the plaintiff to "file with his declaration an affidavit ... stating the true amount the defendant [was] indebted to him ...." Judge McSherry said for the Court:
"Inasmuch as a balance is claimed, it is perfectly evident that there must be a debit and a credit side to an account from which that balance was taken. The balance so produced is not an account, but the result of an account. It bears to an account precisely the same relation that a conclusion does to the premises of a syllogism. McWilliams v. Allan, 45 Mo. 573. An account is the statement of two merchants or others who have dealt together, showing the debits and credits between them. 1 Bouv. Law Dic. 48. The correctness of the balance depends upon the accuracy of the debits and credits." Id. at 531.
So long as the $45,000 in question was solely under the control of Tri-County it could not be a part of "the unpaid balance." Had this sum been placed in an escrow account not subject to the sole control of Tri-County, then it properly would be a part of "the unpaid balance." To us the plain meaning of the term "the unpaid balance" is the net amount under the deed of trust note due from the Lyles to Tri-County. Accordingly, when Tri-County attempted to collect interest on the entire $60,000 at the rate of 8%, $45,000 of which it retained, it was guilty of usury.
Judgment affirmed in part and reversed in part and case remanded for entry of a judgment consistent with this opinion; appellee to pay the costs.
NOTES
[1] Virtually the same provision is found today in Code (1975) §§ 12-102 and 12-103 Commercial Law Article which became effective July 1, 1975, and thus is not applicable to this proceeding. The term there used is interest "on the unpaid principal balance of a loan."

There are certain exceptions in both the 1968 and 1975 acts which are not relevant to this proceeding.