Lincoln First Bank of Rochester, Respondent, v Edward L. Rupert, Appellant.

Fourth Department, December 16, 1977

APPEARANCES OF COUNSEL

*Peter D. Braun* for appellant.

*Nixon, Hargrave, Devans & Doyle (Dennis M. Hyatt* of counsel), for respondent.

**OPINION OF THE COURT**

HANCOCK, JR., J.

We hold that counterclaims asserted by the debtor, based on alleged violations of the Federal Truth in Lending Act (US Code, tit 15, § 1601 *et seq.)* and the New York Motor Vehicle Retail Instalment Sales Act (Personal Property Law, § 301 *et seq.)* were not barred by the applicable Statutes of Limitations even though they would have been time-barred if asserted as separate actions.

Defendant purchased a used 1971 Plymouth Duster from Webster Chrysler Plymouth in March, 1974. He financed it by means of a retail instalment contract with Webster Chrysler Plymouth, dated March 14, 1974, which was assigned to plaintiff, Lincoln First Bank. On April 20, 1977, the bank sued defendant to recover moneys allegedly unpaid under the contract. In his counterclaims set forth in the answer, served on

May 12, 1977, and amended answer, served on June 17, 1977, defendant alleges violations of the disclosure provisions of the Federal and State statutes. The court below has granted plaintiff's motion to dismiss all of defendant's counterclaims as time-barred.

The questions presented are:

1. whether subdivision (e) of section 1640 of title 15 of the United States Code which states "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation" is a bar to defendant's two counterclaims, based upon violations of the Federal Truth in Lending Act (US Code, tit 15, § 1601 *et seq.)* and regulation Z thereunder (12 CFR 226.1 *et seq.),* contained in an answer served more than one year from the date of the alleged violations (the date the retail instalment contract was signed); and

2. whether the defendant's third counterclaim, alleging noncompliance with the disclosure provisions of section 302 (subd 5, par [1]) of the Personal Property Law is saved from the operation of the three-year Statute of Limitations (CPLR 214, subd 2) by the tolling provision contained in CPLR 203 (subd [c]).

### I. THE FEDERAL TRUTH IN LENDING ACT COUNTERCLAIMS

■ Respondent contends that, because the one-year limitation provision (US Code, tit 15, § 1640, subd [e]) is an integral part of the Federal Truth in Lending Act (US Code, tit 15, § 1601 *et seq.),* it is substantive and not procedural and that it is, therefore, a limitation on the liability created by the statute which may not be tolled or extended. We agree with the general proposition that where, as here, a statute creates a right unknown at common law, and also establishes a time period within which the right may be asserted, the time limit is a substantive provision which "qualifies" the right—in effect, a condition attached to the right as distinguished from a Statute of Limitations which must be asserted by way of defense *(Romano v Romano,* 19 NY2d 444, 447). But to ascertain whether the substantive time limitation is to be applied rigidly, without exception, as respondent asserts, or whether there are circumstances under which it may be tolled or extended, we must look to the statute itself and its purpose to

determine the Congressional intent. As stated in *Burnett v New York Cent. R. R. Co.*[1] (380 US 424, 426-427):

"The basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable * * * after the prescribed time' *Midstate Horticultural Co. v Pennsylvania R. Co.,* 320 US 356, 360. Classification of such a provision as 'substantive' rather than 'procedural' does not determine whether or under what circumstances the limitation period may be extended [footnote omitted]. As this Court has expressly held, the * * * limitation period is not totally inflexible, but, under appropriate circumstances, it may be extended [citations omitted]. These authorities indicate that the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances.

"In order to determine congressional intent, we must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act."

(See, also, *American Pipe & Constr. Co. v Utah,* 414 US 538.) Accordingly, we turn to the question of the statute's construction.

■■ A basic and necessary consideration in the interpretation of a statute is the general purpose and policy underlying its enactment (McKinney's Cons Laws of NY, Book 1, Statutes, § 96). A court, in construing a statute, should consider the "mischief sought to be remedied" and should favor the construction which will "suppress the evil and advance the remedy." (McKinney's Cons Laws of NY, Book 1, Statutes, § 95.)

■■ From an examination of the statute itself, one readily concludes that the purpose of the Federal Truth in Lending Act is to protect the borrower by requiring a full disclosure of the terms of the credit transaction, so that he may be better able to compare the cost of credit, and that the "mischief sought to be remedied" is the very type of nondisclosure in the retail instalment contract about which defendant com-

---

1. In *Burnett,* the court held that a limitation provision in the Federal Employers' Liability Act, set forth in the United States Code (tit 45, § 56 [1958 ed]), providing that "[N]o action shall be maintained * * * unless commenced within three years from the day the cause of action accrued," was tolled during the period that a prior action, subsequently dismissed, had been pending in an Ohio court.

plains.[2] The statute, which is designed to prevent unscrupulous creditor practices, is remedial, and must be liberally construed to effectuate the Congressional intent (*Littlefield v Flanagan & Co.,* 498 F2d 1133, 1136; *Freed Co. v Board of Governors of Fed. Reserve System,* 473 F2d 1210, 1214, cert den 414 US 827). It is apparent from the statute also that the only method of enforcing the disclosure requirements provided by Congress is the civil remedy set forth in section 1640 of title 15 of the United States Code. Thus, the holding, urged by respondent, that a consumer should be barred by the one-year limitation from asserting a Federal Truth in Lending Act counterclaim where the creditor has not commenced suit until the one-year period has expired, would frustrate the very purpose and spirit of the legislation. It would permit an unscrupulous creditor, by the simple expedient of withholding suit against an uninformed or trusting borrower, to ignore the disclosure requirements with the assurance that the borrower's truth-in-lending claims would be barred if he should be alerted to the creditor's violations when suit is finally commenced. We reject such an anomolous and unjust construction as contrary to the very ends Congress sought to achieve by enacting the legislation.

Nothing in the statute compels a different construction. On the contrary, that the statutory time limit applies only to "actions" and omits any reference to counterclaims, setoffs or recoupments, and that the statute's language is permissive and not mandatory (i.e., "may be brought" rather than "must be brought") support the interpretation we reach[3] (see McKinney's Cons Laws of NY, Book 1, Statutes, § 177, subds a and b).

Our holding that truth-in-lending counterclaims arising out of the transaction sued on should not be barred by the one-

---

**2.** In section 1601 of title 15 of the United States Code a declaration of the purpose of subchapter I of chapter 41—Consumer Credit Protection Act—is set forth. It states in pertinent part: "It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." (See *Philbeck v Timmers Chevrolet,* 499 F2d 971, 976; *Littlefield v Flanagan & Co.,* 498 F2d 1133, 1136; *Freed Co. v Board of Governors of Fed. Reserve System,* 473 F2d 1210, 1214, cert den 414 US 827.)

**3.** Contrast *Burnett v New York Cent. R. R. Co.* (380 US 424) where the court, despite the mandatory language of the Federal Employers' Liability Act time limitation provision (i.e., "no action shall be maintained") nevertheless held that the Congressional intent was that the time limitation could be extended or tolled.

year limitation in subdivision (e) of section 1640 of title 15 of the United States Code, is consistent with decisions in other jurisdictions, and in New York (see, e.g., *Connecticut Bank & Trust Co. v Ossen,* 5 CCH Consumer Credit Guide, par 98,182 [D Con April 29, 1977]; *Wood Acceptance Co. v King,* 18 Ill App 3d 149; *First Nat. City Bank v Drake,* NYLJ, Sept. 27, 1973, p 17, col 6; *Continental Acceptance Corp. v Rivera,* 50 Ohio App 2d 338; *Stephens v Household Finance Corp.,* 566 P2d 1163 [Okla]; *Bankers Guar. Corp. v Powell,* 5 CCH Consumer Credit Guide, par 98,176 [DC Sup Ct, May 11, 1977]).[4]

■ Nor do we discern any intent inconsistent with our holding here in Congress's action in amending section 1640 of title 15 of the United States Code, in 1974, by adding subdivision (h) which provides: "A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) of this section against any amount owing to such creditor by such person, unless the amount of the creditor's liability to such person has been determined by judgment of a court of competent jurisdiction in an action to which such person was a party."

This section was not intended to apply to rights asserted in judicial proceedings, but rather to efforts by the debtor, in advance of any court determination, to deduct unilaterally

---

4. Some of the courts which have allowed time-barred counterclaims have based their holdings not only on the finding that barring the counterclaims would frustrate the purpose of the Federal legislation, but also on the theory that the one-year limitation was procedural in nature and not an integral part of the statute (e.g., *Stephens v Household Finance Corp.,* 566 P2d 1163 [Okla], explaining the decision in *Wood Acceptance Co. v King,* 18 Ill App 3d 149). While, arguably, such view could be adopted (see *Sharrow v Inland Lines,* 214 NY 101, cited in *Public Loan Co. v Hyde,* 89 Misc 2d 226, 229), we have reached the same result by treating the one-year limitation period as an integral part of the statute and by finding that Congress did not intend that it be used to bar a counterclaim in the circumstances presented. Our holding does not require us to depart from *Romano v Romano* (19 NY2d 444) and is consistent with the reasoning in the footnote at page 427 in *Burnett v New York Cent. R. R. Co.,* 380 US 424) where the court comments that whether a period of limitation when it appears in the same statute which creates the right, should be tolled, is a question of legislative intent and does not depend upon the "substantive-procedural" distinction. Nor must we decide whether the counterclaims as pleaded are technically recoupment and whether the Federal common law or CPLR 203 (subd [c]) should determine tolling of the Statute of Limitations (see *Bankers Guar. Corp. v Powell,* 5 CCH Consumer Credit Guide, par 98,176 [DC Sup Ct, May 11, 1977]; *First Nat. City Bank v Drake,* NYLJ, Sept. 27, 1973, p 17, col 6).

We hold, that, based on a construction of the statute, the rights to relief, pleaded by defendant in his first two counterclaims in his amended answer, however they may be characterized, were not intended to be extinguished by the one-year limitation.

from the amount he owes, the amount of the civil penalty allegedly resulting from the Truth in Lending Act violations (see *Bankers Guar. Corp. v Powell,* 5 CCH Consumer Credit Guide, par 98,176 [DC Sup Ct, May 11, 1977], n 10; *Brooks v Maryville Loan & Finance Co.,* 5 CCh Consumer Credit Guide, par 98,427 [ND Ga 1976]; *Stephens v Household Finance Corp., supra; Powers v Sims and Levin Realtors,* [ED Va 1975]; contra, *Public Loan Co. v Hyde,* 89 Misc 2d 226, 230).

It was error, therefore, to dismiss the first two counter-claims.

## II. THE NEW YORK MOTOR VEHICLE RETAIL INSTALMENT SALES ACT COUNTERCLAIM

■ Further, we do not agree with respondent's contention that defendant's claims under section 302 (subd 5, par [1]) of the Personal Property Law are time-barred. As contrasted with the Federal Truth in Lending Act, the New York enactment contains no Statute of Limitations within the body of the statute, and, therefore, the applicable limitations period and rules governing tolling would be the pertinent procedural provisions of the CPLR.

The governing period of limitation is three years under CPLR 214 (subd 2) which applies to "action[s] to recover upon a liability, penalty or forfeiture created or imposed by statute" and not the one-year limitation in section 1640 of title 15 of the United States Code as respondent contends (see *Conrad v Home & Auto Loan Co.,* 53 AD2d 48; and see *Meyer v Frank,* 409 F Supp 1240, 1241; *Lombard v Board of Educ. of City of N. Y.,* 407 F Supp 1166, 1171). However, even under the three-year period, defendant's claim would be barred if the Statute of Limitations is not tolled, because the retail instalment agreement was signed on March 14, 1974, and the defendant's claims were interposed on May 12, 1977. The question, then, is whether the tolling provision, CPLR 203 (subd [c]), is applicable.

CPLR 203 (subd [c]) provides, in pertinent part: "A defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed, except that if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed." The provision is

broad, and encompasses both defenses and counterclaims so long as the claim arises "from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends." *(Chevron Oil Co. v Atlas Oil Co. of Utica,* 28 AD2d 644.)

There can be no doubt that the defendant's claims under section 302 (subd 5, par [1]) of the Personal Property Law arose from the very transaction upon which plaintiff's allegations in the complaint depend—namely, the retail instalment contract between defendant and Webster Chrysler Plymouth, ultimately assigned to plaintiff (see *Matteawan State Hosp. Employees Fed. Credit Union v Torres,* Index No. 1975/2780 [Sup Ct, Dutchess County, Jan. 20, 1977]; *First Nat. City Bank v Drake, supra).*

Nothing in *Matter of SCM Corp. (Fisher Park Lane Co.)* (40 NY2d 788) compels a contrary conclusion. In *SCM Corp.,* the court held that the landlord's counterclaim for reformation of the lease could not be saved by CPLR 203 (subd [c]) from the applicable period of limitation, because the landlord's claim for reformation and the tenant's action to recover rental overpayments did not arise from the same transactions or occurrences. The tenant's claim was predicated on rent escalations resulting from increases in taxes and expenses paid in 1969 and subsequent years, while the landlord's counterclaim, which was not asserted until 1976, was based on allegations as to the intention of the contracting parties prior to and at the time the lease was executed in 1966. The court's holding was (40 NY2d 788, 792): "The tenant's claim relates to performance under the contract; the landlord's relates to the negotiation and articulation of the agreement made between the parties prior to its execution. While in a most general sense both might be said to be associated with the lease, in the language of CPLR 203 (subd [c]), the claims do not arise out of the same transactions or occurrences." Here, in contrast, the very document upon which plaintiff's claim is founded (the retail instalment contract) is the sole basis of defendant's right to relief. Thus, the third counterclaim should not have been dismissed.

Accordingly, the order at Special Term should be reversed and the motion denied.

MOULE, J. P., CARDAMONE and SIMONS, JJ., concur.

Order unanimously reversed, with costs, and motion denied.