In re Lemaefe Feagaimaalii GALEA'I and Aiaiaga Esera Galea'i, Debtors.

Lemaefe Feagaimaalii GALEA'I and Aiaiaga Esera Galea'i, Plaintiffs,

v.

ASSOCIATES FINANCIAL SERVICES COMPANY OF HAWAII, INC., Defendant.

Bankruptcy No. 80–0015.

United States Bankruptcy Court, D. Hawaii.

Oct. 23, 1981.

Steven Guttman, Honolulu, Hawaii, for debtors/plaintiffs.

Kenneth Takenaka, Honolulu, Hawaii, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

On March 25, 1981, Lemaefe Feagaimaalii Galea'i and Aiaiaga Esera Galea'i, husband

and wife, hereafter "Debtors", filed an objection to the allowance of the claim of Associates Financial Services Company of Hawaii, Inc., hereafter "Associates". Associates had filed its proof of claim in the sum of $17,158.23 on February 21, 1980.

Debtors seek to have Associate's claim disallowed in part on two grounds: (1) alleged violations of Hawaii's usury statute and (2) alleged violations of the Federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq.

The third reason for the objection, that the loan agreement was in violation of the Equal Credit Opportunity Regulation B, was not discussed in Debtors' Memorandum nor addressed by Debtors at the hearing. The Court thus makes no ruling on said issue.

With reference to the alleged violation of the usury statute, Debtors contend that Associates charged Debtors the maximum interest allowed under the Hawaii statute and in addition charged a premium for credit disability insurance which was not authorized under the Hawaii statute. Debtors contend that the unauthorized charge constitutes interest and thus, in the instant case, Associates charged Debtors greater interest than allowed by law. Debtors further contend that when the original loan was refinanced, under Hawaii law, Associates had the obligation to credit all payments toward principal and none towards interest. Debtors contend that because Associates failed to properly credit the payments toward principal, the balance owing is inflated by $1,900.

Associates on the other hand, contends that it collected the premiums for credit disability insurance and passed it on to the insurance company; that it did not retain such premiums. Associates thus contends that it was not exceeding the maximum interest authorized under the Hawaii usury statute.

As to the Truth-in-Lending violations, Debtors contend that they are entitled to a $1,000 reduction of their loan balance pursuant to 15 U.S.C. § 1640 and *Pacific Concrete Federal Credit Union vs. Kauanoe*, 62

Haw. 334, 614 P.2d 936 (1980). Debtors contend that there are several violations:

(1) that the total number of payments is not disclosed, (2) that the amount financed on the loan disclosure statement, ($17,099.43), is contradicted on the disclosure statement by the statement that the "total paid to and on behalf of borrower(s) is $17,082.43", a difference of $16.00. Since § 226.8(d)(1) of Truth-in-Lending Regulation Z (12 C.F.R. § 226.1 *et seq.*) defines the amount financed as the amount of credit which will be paid to the customer or for his account or to another person on his behalf, Debtors contend that the amount financed is not properly disclosed, and (3) that the failure to properly credit the original loan balance is a separate violation of the Federal Act.

Associates contends that the Truth-in-Lending Act has a one-year statute of limitation and that Debtors are barred by the statute of limitations from raising the issue of a violation of the Truth-in-Lending Act.

A hearing was held on May 21, 1981, at which time Steven Guttman represented Debtors and Kenneth K. Takenaka represented Associates. Based upon the records, memoranda and files herein, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Debtors filed their Chapter 13 petition on January 31, 1980. The case was subsequently converted to Chapter 11 by an order dated June 16, 1980.

2. Associates filed its Proof of Claim on February 21, 1980 for the sum of $17,158.23.

3. On March 25, 1981, Debtors filed an objection to Associates' claim, resulting in the hearing on May 21, 1981.

4. The original loan from Associates to Debtors was made on November 22, 1976. This loan was refinanced on October 18, 1977. In the original loan, Associates charged the maximum interest allowed under Hawaii Revised Statutes (H.R.S.) Section 408–15(b)(2), and in addition charged a

premium for credit disability insurance which is not authorized under H.R.S. Section 408–15.

5. When the loan was refinanced, Associates did not credit all payments made by Debtors toward principal but, instead, applied certain portions of the payments made by Debtors toward the credit disability insurance.

6. The loan disclosure statement states that there are seventy-one (71) payments at $308.11 and one payment at $10,796.35. The disclosure statement does not state that the total number of payments is seventy-two.

7. In addition, there is a discrepancy in the loan disclosure statement. Though the loan disclosure statement provides that the amount financed is $17,099.43, it also contains the statement that the "total paid to and on behalf of Borrower(s) is $17,082.43", a difference of $16.00.

## CONCLUSIONS OF LAW

A. *Was there a violation of the Hawaii usury law?*

1. Associates is an industrial loan company pursuant to Chapter 408, H.R.S. At the time that the loan in question was made, under H.R.S. Section 408–15, loan companies were not authorized to collect credit disability insurance from the borrowers. This is admitted by Associates.

2. In the instant case, Associates collected from Debtors premiums for credit accident and health insurance on the original loan transaction concluded on November 22, 1976. Debtors contend that this is tantamount to charging interest and that since Associates is already charging the maximum rate authorized, the additional charge for premiums covering health and accident insurance resulted in a violation of the statute.

3. The Supreme Court of Hawaii has held that the word "interest" must be read in its ordinary and usual meaning.

The word "interest" must also be read in its ordinary meaning. Interest is commonly defined as a payment made for the privilege of using another's money. Interest arises not from the sale of any commodity, but rather as a charge for the use of money loaned. Such a lender invests his money, getting back the sum lent plus a return in the form of interest. (citations omitted). *Hawaiian Beaches, Inc. v. Kondo,* 52 Haw. 279, 281, 474 P.2d 538, 540 (1970).

4. The case of *Lyle v. Tri-County Federal Savings and Loan Ass'n. of Waldorf,* 33 Md.App. 46, 363 A.2d 642 (1976), is instructive as to the test to be applied in determining whether an item is to be considered an interest charge or not. In *Lyle,* the borrowers sought recovery of alleged usurious interest for the imposition and collection of charges made by the lender for a credit report and an appraisal fee in connection with a loan made by the lender. The court held that the determining factor, in the event of any ambiguity as to whether a fee or charge should be included as interest, is whether such charge is retained by the lender. If it is so retained, it should be treated as interest, whereas, if neither the charge for the credit report nor the appraisal fee was retained by the lender, such charges were not to be considered as interest, and therefore, were not usurious.

5. In the case at bar, the premium for credit accident and health insurance was never retained by the lender, but merely collected and passed on to the insurance carrier as a service to the borrower. Based upon the definition of interest as set forth in *Hawaiian Beaches* and applying the test in *Lyle,* the premium charges here cannot be construed as interest.

6. Debtors contend that, where a lender charges or collects fees, which are not specifically enumerated in H.R.S. Section 408–15, the penalty to be imposed for the collection of such charges are covered under H.R.S. Section 408–16. Debtors argue that unless the penalty provisions of 408–16 are imposed for said violations, no other penalty would be available.

7. Section 408–15, reads in part as follows:

§ 408–15 Interest rates; other charges; refunds. (a) No industrial loan company shall directly or indirectly charge, contract for, collect, or receive any interest, discount, fees, charges, or other consideration on any loan made by it except as provided by this section.

. . . .

(h) Other charges. In addition to the interest, discount, or other charges permitted by this section, an industrial loan company shall also have power to collect in advance or otherwise from the borrower any of the following charges:

(A list of authorized charges is then set forth).

8. Section 408–16, sets forth the penalty in the event that interest in excess of the amount authorized by statute is charged. Section 408–16 reads as follows:

§ 408–16 Other interest provisions inapplicable; effect of excessive interest. Sections 478–4 and 478–6 shall not apply to industrial loan companies.

If a greater rate of interest than that permitted by this chapter is contracted for in any contract within the purview of this chapter, the contract shall not, by reason thereof, be void. But if, in any action on the contract, proof is made that a greater rate of interest than that permitted by this chapter has been directly or indirectly contracted for, the plaintiff shall only recover upon the contract the amount actually received by the borrower on the contract in cash, credit or the equivalent thereof, or any combination of cash, credit, or the equivalent thereof, any combination of cash, credit, or the equivalent, plus the charges (if any) which were actually incurred by the company and properly charged to the borrower under items (1) to (3), of section 408–15(h), and which have not been deducted from the principal amount of the contract or otherwise paid by the borrower; and, if interest has been paid, judgment shall be for the aforesaid recoverable amount less the amount of interest so paid; and the defendant shall recover his costs. [L 1937, c 231, pt of § 1; am L 1939, c 75, pt of § 1 (6782W); RL 1945, § 8816; RL 1955, § 194–16]

9. The penalty provisions of Section 408–16, are intended to cover situations where a lender has charged interest in excess of the rate permitted by statute. In such a case, the lender is permitted to recover only the amounts actually received by the borrower and any charges actually incurred and properly charged, and no interest can be recovered. The lender must also pay for the borrower's costs.

10. Debtors are incorrect in their assertion that Section 408–16 is the only available penalty provision for violations of chapter 408. The proper penalty for violations of Section 408–15, is also found in Section 408–29, which provides for a fine of not less than $10.00 nor more than $500.00 for each violation of this chapter, where there is no other penalty specifically provided.

■ 11. Based on the foregoing, the Court finds that there was no violation of the usury statute. Associates may have violated H.R.S. Section 408–15 since it was not authorized to collect credit disability insurance. The Debtors should pursue this matter in the appropriate state forum since this court has no power to collect fines or penalties as provided under state law.

B. *Was there a violation of the Truth-in-Lending Act?*

12. Under the Truth-in-Lending Act, Regulation Z, 12 C.F.R. § 226.8(b)(3), the lender is required to state the "number, amount, and due dates or periods of payments scheduled to repay the indebtedness . . . ." Further, if any payment is more than twice the amount of an otherwise regularly scheduled equal payment, such payment must be identified by the term "balloon payment".

13. Associates, in its disclosure statement, identified the payments due as seventy-one (71) payments at $308.11 and one payment at $10,796.35 and clearly identified the last payment as a balloon payment. Associates failed to state that Debtors

would be making a total of seventy-two (72) payments.

14. In *Powers v. Sims & Levin Realtors,* 396 F.Supp. 12 (E.D.Va.1975), *aff'd in part* and *rev'd in part* on other grounds, 542 F.2d 1216 (4th Cir.1976), in ruling on the Truth-in-Lending Act the district court stated:

Defendant nowhere states that 60 payments will be required to repay the indebtedness. Plaintiffs, of course, might have arrived at the number by simple addition. The requirement of the regulation is, however, not satisfied by the creditor's disclosure of foundation information by which, it is hoped, consumers will be enabled to arrive at the final computations themselves. The regulation requires full disclosure of the final computation, here the number of payments, and nothing less will satisfy the full disclosure mandate of the act. Strictly construing the requirement of the regulation in order to promote the congressional goal of full disclosure, the Court concludes that the defendant violated § 226.8(b)(3) by not disclosing the number of payments needed to retire the indebtedness and shall enter summary judgment for the plaintiffs on this issue. *Id.* at 20.

15. Courts have recognized that the instant violation is only a technical one. The courts have held, however, that they do not have any discretion in the matter. As was explained in *Lauletta v. Valley Buick, Inc.,* 421 F.Supp. 1036 (W.D.Pa.1976) at page 1040:

The violation we have noted is admittedly technical and, if free to so, the Court would be inclined as a matter of equity to view the plaintiff's actual knowledge of GMAC's role in this matter as sufficient to shield defendant from liability. However, many of the requirements of the Truth-in-Lending Act are technical in nature, and the Court is not at liberty to deviate from them as it sees fit.... Regardless of the wisdom or validity of that proposition, it is not this Court's prerogative to substitute its own view for that of Congress.

16. Based on the foregoing, the Court finds that, when Associates failed to state that the total number of payments was seventy-two (72), it violated the provisions of the Truth-in-Lending Act.

*C. Does the one-year statute of limitations in the Truth-in-Lending Act bar Debtors from relying on said Act as a defense?*

17. Associates contends that Section 1640(e) of Title 15 U.S.C. provides that any action seeking civil relief for alleged violations of the Truth-in-Lending Act must be brought in a court of competent jurisdiction within one year of the date of the occurrence of the violation, therefore, Debtors are barred from relying on the Act.

18. In *Pacific Concrete F.C.U. v. Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980), the court held that the one-year requirement in Section 1640(e) does not bar a recoupment defense to diminish or defeat the creditor's charges. The court further held that where the original action was a creditor's suit to recover outstanding amounts owing on loans taken by the debtor and the debtor alleges violations in the loan transactions which are the subject of the suit, the defense is in the nature of a recoupment and the one year limitation does not bar such defense. In support of its position, the Hawaii Supreme Court said:

Denying debtors their counterclaims in this situation could work an injustice and undercut the aim of the TILA. The typical consumer is unaware of his rights under the Act until his creditor files suit to collect on the loan and the debtor is forced to consult an attorney. Creditors will be encouraged to wait until after the one-year period before bringing suit, confident that debtors' claims will be barred. As the Supreme Court of New York, Appellate Division, so aptly stated in *Lincoln First Bank of Rochester v. Rupert,* 60 A.D.2d 193, 400 N.Y.S.2d 618, 620:

Thus, the holding, urged by respondent, that a consumer should be barred by the one-year limitation from asserting a Federal Truth in Lending Act counterclaim where the creditor has not

commenced suit until the one-year period has expired would frustrate the very purpose and spirit of the legislation. It would permit an unscrupulous creditor, by the simple expedient of withholding suit against an uniformed or trusting borrower, to ignore the disclosure requirements with the assurance that the borrower's truth-in-lending claims would be barred if he should be alerted to the creditor's violations when suit is finally commenced. We reject such an anomalous and unjust construction as contrary to the very ends Congress sought to achieve by enacting the legislation.

In addition, statutes of limitations are primarily designed to prevent stale claims and assure fairness to defendants and do not bar defenses such as recoupment. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Burnett v. New York Central R. Co.,* 380 U.S. 424, 428 [85 S.Ct. 1050, 1054, 13 L.Ed.2d 941] (1965). Id. 62 Haw. at 342–43, 614 P.2d 936.

19. Likewise, in *Beneficial Finance Co. v. Swaggerty,* 86 N.J. 602, 432 A.2d 512 (1981), the court held that the one-year statute of limitations can be circumvented if the Debtor asserts the claim as a recoupment defense arising out of the same transaction as the underlying debt, and the main action is timely filed.

20. In reaching its decision, the court in *Beneficial Finance Co.* looked to the intent of Congress. It stated:

In ascertaining congressional intent, we begin with an examination of the conditions that led to the enactment of the TILA. Before the TILA, borrowers were confronted with a thicket of divergent and sometimes fraudulent lending practices. Frequently those consumers with the most compelling need for credit became the victims of their own lack of commercial sophistication and of sharp practices of lenders. By requiring disclosure of credit terms and hidden costs, the TILA cut a path to guide the consumer to an informed use of credit. Congress hoped that consumers would compare the costs of credit and make meaningful decisions before borrowing. *Mourning v. Family Publications Service, Inc., supra,* 411 U.S. at [356] 363–365, 93 S.Ct. [1652] at 1657–58 [36 L.Ed.2d 318]. Accordingly, the TILA has been described as a remedial statute to be construed liberally to effectuate legislative intent. *Public Loan Co. v. Hyde, supra,* 47 N.Y.2d [182] at 186, 417 N.Y.S.2d [238] at 241, 390 N.E.2d [1162] at 1165.

Although the purpose of the one-year period of limitations is not clear from the legislative history, permitting a counterclaim for recoupment is consistent with the general policy of the TILA. *Household Fin. Corp. v. Pugh, supra,* Minn., 288 N.W.2d [701] at 707; *Household Consumer Discount v. Vespaziani, supra,* 490 Pa. [290] at 223 n. 14, 415 A.2d [689] at 696–697 n. 14. Several courts have noted that to bar the defense of recoupment on the ground of the statute of limitations would frustrate the policy of the Act. Creditors could intentionally delay bringing suit to escape the consequences of non-disclosure. (citations omitted). 432 A.2d at 518–19.

■ 21. Based upon the *Pacific Concrete F.C.U.* and *Beneficial Finance Co.* cases, this Court finds that when a creditor commences a court action against a debtor, the debtor may defend against said action by alleging that the creditor had violated the Truth-in-Lending Act at the time when the loan was transacted, even though one year has elapsed since the loan transaction.

22. In the instant case, the Debtors raised the matter of violation of the Truth-in-Lending Act as an objection to claim in their bankruptcy case, which they had ini-

tiated. The bankruptcy case caused Associates to file its proof of claim to which Debtors have objected. The question is whether or not the Debtors may still circumvent the one-year statute of limitations, when it is the Debtors rather than the creditor who has initiated the adversary proceeding.

23. Prior to Debtors filing their bankruptcy petition on January 30, 1981, Associates had brought an action on June 18, 1979 against the Debtors in the state circuit court entitled *Associates Financial Services Company of Hawaii, Inc. v. Lemaefe F. Galeai, et al.,* Civil No. 58246. On August 7, 1979, Debtors filed their answer but did not raise as a defense any violation under the Truth-in-Lending Act. On January 28, 1980 the Debtors filed a Motion to Amend its Answer in the state court, wherein they raised as a defense the violation under the Truth-in-Lending Act. The state court has not acted on Debtors' motion because of the automatic stay which was imposed when Debtors filed their petition in the bankruptcy court.

24. The Court finds that one of the reasons the Debtors filed for relief in the bankruptcy court, was because of Associates' suit against them in the state court. Since it was Associates who initiated the original court action, this Court finds that, although over a year has gone by since the violation by Associates under the Truth-in-Lending Act, Debtors may still rely on such violation as a recoupment defense against Associates' claim.

25. Under 15 U.S.C. § 1640(a), the civil penalty for failure to provide information required to be disclosed shall be the sum of twice the amount of any finance charge in connection with the loan transaction, except the liability shall not be less than $100 nor greater than $1,000. In addition, in a successful action to enforce liability, the borrower may recover the costs of the action plus reasonable attorney's fees as determined by the court.

26. Having found that Associates has violated the Truth-in-Lending Act, the Court hereby deducts the sum of $1000.00

from the claim of Associates. The matter of attorney's fees and costs payable to Debtors will be determined at a subsequent hearing.

An Order will be signed upon presentment.