121 N.J. Super. 252 (1972)
296 A.2d 557
RONALD E. GIBBINS AND HARRIET M. GIBBINS, PLAINTIFFS,
v.
VINCENT KOSUGA AND PAULINE KOSUGA, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 2, 1972.
*253 Mr. Lewis P. Dolan, Jr. for plaintiffs (Messrs. Dolan and Dolan, attorneys).
Mr. Richard H. Hughes for defendants (Messrs. Silverman, Weber & Hughes, attorneys).
EGAN, J.C.C. (temporarily assigned).
This action for breach of contract and misrepresentation, with a counterclaim on a note, presents the unusual picture of a suit instituted in March 1971 on a transaction occurring in May 1961, approximately ten years earlier. Needless to say, the statute of limitations was urged to defeat both the complaint and the counterclaim. The procedural context of the case gives it a somewhat distinctive twist.
The history of the dispute follows. Defendants were the owners of a tract of land in Frankford Township, Sussex *254 County, New Jersey, where they built a dwelling which they conveyed to plaintiffs. Closing took place on May 11, 1961. The price was $16,500, of which $15,000 was paid by plaintiffs in cash and through the proceeds of a mortgage loan they obtained from a local bank. Defendants took back a promissory note for the $1,500 balance payable on September 1, 1961, approximately 3 1/2 months later.
The note was not paid when due, and still has not been paid, but defendant vendors never instituted suit thereon.
Plaintiffs lived uneventfully on the property for about seven years and then moved to another home, leasing these premises to tenants who vacated in September 1970. At about that time plaintiffs had contracted to sell the property to a third party. The prospective purchaser had a survey made, disclosing for the first time that the well supplying water to the dwelling was not located on the property but on that of a neighbor. An easement to continue using the well being unobtainable, plaintiffs were required to have a new well dug around October 1970 at a cost of $1,498.50 in order to consummate the sale of the property.
Plaintiffs' action for breach of contract and misrepresentation is based on their claim that prior to the 1961 sale to them, defendants had represented in effect that there was a well included as part of the deal. Defendants denied initially that any such representation was expressly articulated. The need to resolve such a fact issue was, however, eliminated at trial when the defendant Vincent Kosuga testified quite candidly that, although he had no recollection of what might have been discussed more than ten years ago, he certainly thought the well was located within the boundaries and he sold the house on the belief that it had its own water supply. The court therefore, as finder of the fact, has no problem with the conclusion that the agreement between the parties included a water supply.
In answer to plaintiffs' action for the $1,498.50 cost of the new well, defendants initially denied the allegations of the complaint and pleaded the affirmative defense that the *255 complaint was barred by the statute of limitations. They later filed an amended answer, adding a counterclaim for the $1,500 which was never paid on plaintiffs' note of May 11, 1961. (The mere $1.50 difference between the complaint and the counterclaim is a curious, but apparently genuine, coincidence.)
The distinctive twist is that plaintiffs urge that their claim is not barred by the statute of limitations but that defendants' counterclaim is. The distinction, they assert, is that although both causes of action are governed by the six-year statute, N.J.S. 2A:14-1, it is not a bar to their own claim because under the so called "discovery" rule, the running of the statute against them was tolled for almost ten years until they first learned of the absence of the well.
On the theory that no such saving grace is available to defendants, plaintiffs made a motion for summary judgment dismissing the counterclaim solely on the grounds of the statutory bar. This motion was granted by Judge Gascoyne. Thereafter the matter was pretried but, with reference to legal issues, no mention was made in the pretrial order of the promissory note or, for that matter, defendants' own plea of the statute of limitations and plaintiffs' contention re its tolling.
When the case came on for trial defendants argued that, even though their counterclaim had been dismissed as an affirmative claim, they still should be allowed to set it up by way of set-off or recoupment against plaintiffs' claim. Plaintiffs responded, first, that set-off or recoupment did not appear as an issue in the pretrial order. Secondly, they urged that, under the doctrine of res judicata or collateral estoppel, Judge Gascoyne's dismissal of the counterclaim foreclosed defendants from attempting to revive the same issue by way of set-off or recoupment. Thirdly, they urged that N.J.S. 2A:14-27 prohibited defendants' use of the statute of limitations by way of set-off because defendants' claim on the note was for liquidated damages and the cited section very specifically states:
*256 The limitations provided by this chapter shall apply to the case of any debt or demand for liquidated damages alleged by way of set off.
Given this background, is there an inequity or anomaly in making the statute of limitations available to protect one party to a transaction while simultaneously denying its protection to the other party in precisely the same transaction? We must begin by accepting as a fact a very real discrepancy between the durability of the identical statute of limitations as applied to the two parties to this transaction. The nature of plaintiffs' cause of action is such that the statute does not begin to run until they discovered that they had suffered a legal wrong. New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419 (1968). They had no reason to know of the lack of their own water supply until 1970. They could not be charged, therefore, with sleeping on their rights until they had reason to know those rights had been violated. Plaintiffs' affirmative claim therefore was not barred ten years after consummation of the contract which gave rise to it.
What about defendants' counterclaim on the note? Clearly, they knew precisely when it was due. They let the due date pass, and well over six years beyond it without making any claim. Clearly, the statute of limitations was properly invoked to dismiss their counterclaim. Dismissal of the counterclaim, as such, was proper. But if defendants could not use plaintiffs' obligation as a sword, must it follow that they could not use it as a shield? The answer lies in an analysis of the use to which they sought to put the plaintiffs' debt. And this involves an understanding of the logical and historical distinctions in counterclaims, set-offs and recoupments. A counterclaim is an affirmative effort to enforce or collect upon an affirmative claim, and as already indicated, had been forever forfeited by defendants and foreclosed by Judge Gascoyne's order of dismissal.
*257 Our attention must therefore first be directed to the difference between set-off and recoupment, and second, to whether either is available to defendants. They are alike in that they are both mechanisms of defense; they differ in their operative availability.
Recoupment differs from set off mainly in that the claim must grow out of the identical transaction that furnishes the plaintiff's cause of action and, being in the nature of a claim of right to reduce the amount demanded, can be had only to an extent sufficient to satisfy the plaintiff's claim. In other words, recoupment goes to the justice of the plaintiff's claim, and no affirmative judgment can be had thereon, while set off is not necessarily confined to the justice of such particular claim, and an affirmative judgment may be had for any amount to which the defendant established his right over and above the amount to which the plaintiff has proved he is entitled. [Grand Rapids v. McCurdy 136 F.2d 615 (6 Cir.1943)].
20 Am. Jur.2d, Counterclaim Recoupment and Setoff, § 11. See also, Annotation, 1 A.L.R. 2d 630.
Almost the identical issue was presented to the court in Atlantic City Hospital v. Finkle, 110 N.J. Super. 435 (Cty. Ct. 1970). Plaintiff hospital had sued defendant, a former patient, for services rendered, well within two years after their cause of action accrued. Defendant was allowed to file an answer and counterclaim for personal injuries long out of time, more than a year and a half after the suit had been instituted. By this time defendant's counterclaim against the hospital was well beyond the two-year period for bringing such an action. The hospital moved for summary judgment dismissing the counterclaim as barred by the statute of limitations. The court denied the motion. However, the opinion was explicit in limiting its holding to the facts of that case where the counterclaim asserted a recoupment which was not barred "as of the time when the principal action was commenced" even though when actually filed it would have been barred as an independent action.
*258 The question now before this court, therefore, goes just a step further and asks whether a stale claim can be used by way of recoupment if it was already barred as of the time the principal action was commenced. The fact that recoupment seeks the reduction of a claim because of an offsetting claim arising out of exactly the same transaction would seem in logic and in equity to justify treating it differently than a set-off which seeks a reduction because of an offsetting claim arising out of a totally unrelated transaction. To hold differently would be to permit the inequity of one party to a transaction demanding full performance from the other while refusing to perform fully itself.
Again, because of the distinction between set-off and recoupment, the provisions of N.J.S.A. 2A:14-27 do not become operative. They refer to "liquidated damages alleged by way of set-off." Defendants' claim on the note is for liquidated damages but it does not originate as a set-off.
Plaintiffs' argument that the summary judgment dismissing the counterclaim creates a collateral estoppel or res judicata barrier to the use of the unpaid note merely as a defense by way of recoupment is without merit. True, the order dismissing the counterclaim will forever and everywhere preclude defendants from affirmatively seeking to recover on the note. But the court never adjudicated defendants' substantive rights under it. It determined only that they had forfeited their remedy to collect it. The case of Washington Tp. v. Gould, 39 N.J. 527 (1963), is readily distinguishable. Involved therein was a second attempt to litigate the constitutionality of a zoning ordinance completely prohibiting trailer parks after the court had previously held it constitutional. Plaintiffs here rely on the language of the court when it stated that where a judgment of a court of competent jurisdiction directly determines a right, question or fact distinctly put in issue, such judgment estops the parties or their privies from thereafter relitigating the same issue in a subsequent proceeding between *259 them, regardless of its nature or form. But the dismissal of defendants' counterclaim here was simply an adjudication that the statute of limitations deprived them of a remedy. It did not "directly determine a right, question or fact distinctly put in issue" in connection with the note. Defendants' substantive rights on the note were not put in issue. No substantive fact concerning the validity, execution, or consideration for the note were put in issue. The court never got beyond checking the due date on the note against a date on the calendar six years later to determine whether defendants' affirmative claim had been asserted within the statutory period. This perfectly proper but nevertheless perfunctory examination of the note cannot set up a collateral estoppel to defeat defendants' right of recoupment.
The least troublesome of plaintiffs' arguments to exclude the defense of recoupment is the failure to include it in the pretrial order. To begin with, R. 1:1-2 permits a relaxation of the rules "to secure a just determination." The court is not unmindful of the importance of the pretrial order and the philosophy explained in Lertch v. McLean, 18 N.J. 68 (1955), and repeated in Muntz v. Newark City Hospital, 115 N.J. Super. 273 (App. Div. 1971). It does not commend the somewhat casual manner in which defendants approached the pretrial, at least as disclosed by their pretrial memo. On the other hand, defendants' efforts to use the promissory note as some form of defense did not come to plaintiffs as a bolt out of the blue. It was not an "afterthought," as in Muntz. And unlike the situation in Lertch, there will very clearly be real harm suffered by the defendants in this case if they cannot use the note for the very limited purpose of recoupment. They would be exposed to the patent inequity of having to pay $1,498.50 to someone who allegedly owes them $1,500. Presumably mandatory rules can be relaxed when "enforcement would be inconsistent with substantial justice," as for example in allowing *260 the defense of contributory negligence even when it has not been pleaded as mandated by R. 4:5-4. Douglas v. Harris, 35 N.J. 270 (1961).
Only one point remains to be clarified. Plaintiffs' attorneys suggested they might wish to present evidence to meet the defense of recoupment and show why the note was not paid if the court allowed this defense. Under the circumstances, plaintiffs should have that opportunity if in fact they seek it. Plaintiffs therefore will be allowed two weeks from the receipt of this decision within which to request a hearing on the reasons for not paying the note. To the extent that those reasons are valid and proper, defendants' right of recoupment would be abated proportionately. If no such application is made within two weeks, a judgment will be entered in favor of defendants.