BENEFICIAL FINANCE CO. OF ATLANTIC CITY, PLAINTIFF,
v. ROBERT SWAGGERTY AND YVONNE
SWAGGERTY, DEFENDANTS.

CONSUMERS FINANCIAL SERVICES, PLAINTIFF-RESPON-
DENT, v. THERESA A. TAYLOR,
DEFENDANT-APPELLANT.

Argued January 27, 1981—Decided July 21, 1981.

*Jonathan I. Epstein* argued the cause for appellant (*Timothy Weeks*, Executive Director, Essex Newark Legal Services, attorney).

*Neil J. Fogarty* argued the cause for *amicus curiae* Legal Services of New Jersey, Inc. (Melville D. Miller, President, attorney; *Mr. Neil J. Fogarty, Gail Chester, Steven P. McCabe, Sally Steinberg* and *James Daniels*, of counsel and on the briefs).

*Irving U. Young* argued the cause for respondent (*Young & Young*, attorneys; *Harold V. O'Grady*, on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

This case presents the question whether a debtor can assert a defense of recoupment under the federal Truth In Lending Act (TILA), 15 *U.S.C.A.* § 1601 *et seq.* (1974 & Supp.1981), to reduce her liability in a suit brought by a creditor on the debt, although an affirmative action for relief on the same claim would be barred by the applicable one-year statute of limitations. Both the trial court and Appellate Division ruled that a debtor cannot

assert a recoupment defense in these circumstances. We reverse and remand.

I

On October 7, 1974, defendant Taylor executed a promissory note with plaintiff Consumers Financial Services (CFS) whereby she borrowed $750 to be repaid over a three-year period at 23.68% interest. Taylor made monthly payments through July 1976 and then defaulted. CFS brought suit in December 1976 to recover the balance due on the note. By way of counterclaim filed September 23, 1977, Taylor alleged violations of the TILA, 15 *U.S.C.A.* § 1601 *et seq.* (1974 & Supp.1981), and related federal regulations. These violations arose from a failure to disclose "clearly and conspicuously" the nature of the security interest retained contrary to 15 *U.S.C.A.* §§ 1631(a), 1639(a)(8) (1974).

At trial, the parties agreed there was no factual dispute and each moved for summary judgment. CFS admitted the existence of a TILA violation but argued that Taylor's counterclaim was time-barred. Taylor urged that the statutory penalties for failure to disclose could be raised as a defense to reduce recovery by CFS.

The trial court dismissed Taylor's counterclaim and entered judgment for CFS on the note. The trial judge reasoned that the TILA was not a "procedural" statute of limitations that bars only the remedy after expiration of the filing period, but a "substantive" statute of limitations that extinguishes the right as well as the remedy if the claim is untimely brought. In affirming, the Appellate Division ruled that recoupment was also unavailable on the ground that the debtor's counterclaim did not arise out of the same transaction as the lender's claim on the note. 170 *N.J.Super.* 398 (1979). We granted certification. 84 *N.J.* 439 (1980).

In the Appellate Division, *Consumers Financial Services v. Taylor* was consolidated with another case raising the same

issue, *Beneficial Fin. Co. of Atlantic City v. Swaggerty,* 159 *N.J.Super.* 507.. No petition for certification, however, was filed on behalf of *Swaggerty.* Consequently, on the appeal before us, we shall consider the judgment of the Appellate Division only insofar as it pertains to *Consumers Financial Services v. Taylor.*

Our determination to reverse the judgment below rests upon an analysis of the following issues: (a) whether federal law or state law governs Taylor's right to press the TILA counterclaim; (b) whether the TILA counterclaim is embraced within the definition of recoupment; (c) whether 15 *U.S.C.A.* § 1640(h) (Supp.1981) precludes Taylor's recoupment counterclaim; and (d) whether Taylor's right to recoupment is lost because 15 *U.S.C.A.* § 1640(e) (1974) is a "substantive" statute of limitations that requires timely filing of the action as a condition precedent to the existence of the right. For the reasons expressed below we conclude that, although in this instance both federal and New Jersey law permit the defense, federal law governs the validity of a TILA counterclaim. We conclude further, consistent with congressional intent underlying the TILA, that a TILA defense is a form of recoupment that survives the one-year limitations period as long as the main action is timely brought.

## II

The TILA, enacted by Congress in 1968, is designed to promote an "informed use of credit" and to protect the borrower from unscrupulous creditor practices by requiring the lender to disclose clearly and fully the credit terms of a loan. 15 *U.S.C.A.* § 1601(a) (Supp.1981). A lender who fails to satisfy the Act's disclosure requirements is subject to civil liability to the debtor for twice the amount of the finance charge, but not less than $100 nor more than $1,000. 15 *U.S.C.A.* § 1640(a)(2) (Supp.1981). Affirmative action by the debtor is barred if instituted after the one-year period of limitations. 15 *U.S.C.A.* § 1640(e) (1974).

The issue whether a TILA recoupment claim may survive the one-year statute of limitations as a defense to reduce a creditor's

recovery has not been decided previously in New Jersey, and has received diverse treatment in other state and federal courts. The division of authority among state courts often springs from an application of state law as opposed to federal common law. *See Darrow v. Beneficial Fin. Co.*, 370 *So.*2d 1001 (Civ.App.1979), *cert.* den., 370 *So.*2d 1005 (Sup.Ct.1979) (under Alabama law a counterclaim for a TILA violation is for set-off, not recoupment); *Hodges v. Community Loan & Investment Corp.*, 133 *Ga.App.* 336, 210 *S.E.*2d 826 (Ga.App.1974), aff'd in part and rev'd in part, 234 *Ga.* 427, 216 *S.E.*2d 274 (Sup.Ct.1975) (under Georgia law a counterclaim for a TILA violation is barred after one year); *Empire Fin. Co. of Louisville v. Ewing*, Ky., 558 *S.W.* 2d 619 (Sup.Ct.1977) (under Kentucky law a counterclaim for a TILA violation is for recoupment, not setoff); *Public Loan Co. v. Hyde*, 47 *N.Y.*2d 182, 417 *N.Y.S.*2d 238, 390 *N.E.*2d 1162 (Ct.App.1979) (under New York law a counterclaim is not barred by the statute of limitations if it arises from the underlying transactions sued upon); *Stephens v. Household Fin. Corp.*, 566 *P.*2d 1163 (Okl.1977) (under Oklahoma law a counterclaim is not barred by the statute of limitations until the principal claim is so barred). *But compare Shannon v. Carter*, 282 *Or.* 449, 579 *P.*2d 1288 (Sup.Ct.1978), *cert.* den., 439 *U.S.* 1090, 99 *S.Ct.* 873, 59 *L.Ed.*2d 57 (1979) (applying federal law and denying recoupment) *with Household Consumer Discount v. Vespaziani*, 490 Pa. 209, 415 *A.*2d 689 (Sup.Ct.1980) (applying federal law and permitting recoupment).

The supremacy clause of the United States Constitution dictates, however, that federal law is paramount and contrary state law must yield. *U.S.Const.* art. VI, cl. 2. The United States Supreme Court has held that a state court must apply federal law in determining when a litigant may assert a claim or defense originating in a federal statute. *See Burnett v. New York Central R. Co.*, 380 *U.S.* 424, 85 *S.Ct.* 1050, 13 *L.Ed.*2d 941 (1965) (whether period of limitations is tolled for Federal Employers' Liability Act (FELA) action brought before state court is determined by federal law); *Dice v. Akron, Canton &*

*Youngstown R.R.*, 342 *U.S.* 359, 72 *S.Ct.* 312, 96 *L.Ed.* 398 (1952) (validity of "release defense" under the FELA asserted in state court is question of federal law). Thus, a state court hearing a cause of action arising under a federal statute must apply the relevant federal statute of limitations. *Household Consumer Discount v. Vespaziani, supra,* 490 Pa. at 212–17, 415 *A.2d* at 691–693. In this case, the right of the defendant to assert a TILA recoupment defense flows directly from the statute. We conclude that we are bound to construe the TILA defense of recoupment in light of the one-year federal period of limitations and the surrounding constellation of federal common law.

Our decision is consistent with the policy of the TILA to ensure a uniform application of the federal Act. *See Mourning v. Family Publications Service, Inc.,* 411 *U.S.* 356, 93 *S.Ct.* 1652, 36 *L.Ed.2d* 318 (1973); *N.C. Freed Co. v. Board of Governors of Fed. Res. Sys.,* 473 *F.2d* 1210 (2 Cir. 1973), *cert. den.,* 414 *U.S.* 827, 94 *S.Ct.* 48, 38 *L.Ed.2d* 61 (1973); "Board of Governors' Examiners' Manual of Regulation Z and Truth-in-Lending Act," *reprinted in* 2 *R. Clontz, Truth-in-Lending Manual* C–163 (4 ed. 1976). A right created by federal statute should receive uniform interpretation from state courts throughout the country. Otherwise, local differences can lead to divergent interpretation of rights that should be enjoyed equally by all citizens. Nonetheless, for reasons discussed below in Part III, we find that Taylor may assert her recoupment defense under both New Jersey and federal law.

## III

The federal rule of recoupment has been explored by the United States Supreme Court in a line of tax cases. In *Bull v. United States,* 295 *U.S.* 247, 55 *S.Ct.* 695, 79 *L.Ed.* 1421 (1934), the Court found that a decedent's estate could demand that an excess tax payment be credited against a later claim, although the statute of limitations barred an independent action to recover the excess payment. The Court explained:

> [R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely. [*Id.* at 262, 55 *S.Ct.* at 700]

Inherent in the concept of recoupment is the notion of fundamental fairness. *Rothensies v. Electric Battery Co.*, 329 *U.S.* 296, 299, 67 *S.Ct.* 271, 272, 91 *L.Ed.* 296 (1946). The underlying policy is "to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." *Id.* New Jersey similarly defines recoupment as "the reduction of a claim because of an offsetting claim arising out of exactly the same transaction . . . ." *Gibbins v. Kosuga*, 121 *N.J.Super.* 252, 258 (Law Div.1972). In *Atlantic City Hospital v. Finkle*, 110 *N.J.Super.* 435 (Cty.Ct.1970), a hospital sued a former patient within two years of the date of his hospitalization to recover the cost of services. A counterclaim filed by the patient after expiration of the two-year statue of limitations for personal injury actions sought recovery for injuries allegedly sustained during the patient's hospital stay. In denying the hospital's motion for summary judgment, the court stated that "[r]ecoupment is never barred by the statute of limitations so long as the main action is timely." *Id.* at 439.

Recoupment is distinguishable from setoff in that the latter involves an affirmative recovery on a claim that may be independent of the transaction upon which the plaintiff's claim is based. While recoupment may be utilized only to reduce or extinguish the plaintiff's recovery, setoff may be awarded for any amount to which the defendant is entitled. *Gibbins v. Kosuga, supra*, 121 *N.J.Super.* at 257; *Household Fin. Corp. v. Pugh*, Minn., 288 *N.W.2d* 701, 704 (Sup.Ct.1980). To the extent that the court in *Atlantic City Hospital v. Finkle, supra*, indicated that recoupment may exceed the plaintiff's claim, that case is disapproved. *See generally* 20 *Am.Jur.2d, Counterclaim, Recoupment, and Setoff*, § 11 (1965).

■ The United States Supreme Court has not resolved whether a TILA defense is properly characterized as a recoupment or a setoff. Other courts are divided on this issue.[1] The critical question is whether the TILA counterclaim arises out of the same transaction as the claim for the debt. It is clear that the statutory disclosure obligation is for the express benefit of the credit consumer. 15 *U.S.C.A.* § 1601(a) (Supp.1981). The underlying loan transaction thus serves as the common source for the correlative rights and liabilities of lender and consumer. As recently stated by the Pennsylvania Supreme Court, "It is in fact the cost of the loan (or finance charge) that is often determinative from the borrower's perspective. This information goes to the very heart of the bargain . . . . " *Household Consumer Discount v. Vespaziani, supra,* 490 *Pa.* at 222, 415 *A.2d* at 696. Therefore, disclosure to the consumer of the credit terms of the loan is an essential part of the transaction.

Furthermore, under both federal and New Jersey law, parties are deemed to contract in light of existing law. *Von Hoffman v. City of Quincy,* 71 *U.S.* (4 *Wall.*) 535, 550, 18 *L.Ed.* 403 (1867) (constitutional prohibition against impairment of contract is an implied term of municipal bonds that prevented state from restricting power of municipality to levy taxes to pay bonds); *Peoples National Bank of N.J. v. Fowler,* 73 *N.J.* 88, 101 (1977),

---

[1]Cases holding a TILA claim to be a valid recoupment defense include: *Ballew v. Associates Fin. Ser. Co.,* 450 *F.Supp.* 253, 257 (D.C.Neb.1976); *Household Fin. Corp. v. Hobbs,* 387 *A.2d* 198, 200 (Del.Super.Ct.1978); *Empire Fin. Co. of Louisville v. Ewing, supra,* Ky., 558 *S.W.2d* at 622; *Household Fin. Corp. v. Pugh, supra,* Minn., 288 *N.W.2d* at 705; *Continental Acceptance Corp. v. Rivera,* 50 *Ohio App.2d* 338, 363 *N.E.2d* 772, 776 (Ct.App.1976), certif. den. 50 *Ohio St.2d* 338, 363 *N.E.2d* 772 (1977), *cert.* den. 434 *U.S.* 857, 98 *S.Ct.* 180, 54 *L.Ed.2d* 129 (1977); *Household Consumer Discount v. Vespaziani, supra,* 490 *Pa.* at 220–24, 415 *A.2d* at 695–697. Cases denying a TILA claim as a separate transaction from the underlying debt include: *Basham v. Finance America Corp.,* 583 *F.2d* 918, 927–928, 99 *S.Ct.* 1046, 59 *L.Ed.* 89 (7 Cir. 1978), *cert.* den. *sub nom. DeJaynes v. General Fin. Corp.,* 439 *U.S.* 1128, 99 *S.Ct.* 1046, 59 *L.Ed.2d* 89 (1979); *Darrow v. Beneficial Fin. Co., supra,* 370 *So.2d* at 1004; *Hodges v. Community Loan & Investment Corp., supra,* 133 *Ga.App.* at 342–43, 210 *S.E.2d* at 831.

*cert.* den. *sub* nom. *Peoples National Bank of N. J. v. Stonehill,* 434 *U.S.* 858, 98 *S.Ct.* 182, 54 *L.Ed.*2d 131 (1977) (regulation of the Federal Reserve Board is an implied term of a pledge agreement under which a stockholder pledged his stock as collateral for the loan of another); *Silverstein v. Keane,* 19 *N.J.* 1, 13–15 (1955) (in accordance with principle of mutuality of obligation, agreement to stock and maintain cigarette vending machines implied into lease of machines). *See Johnson v. McCrackin-Sturman Ford, Inc.,* 527 *F.*2d 257 (3 Cir. 1975) (Pennsylvania statute requiring a rebate of unearned finance charges will be deemed an implied term of parties' contract where action brought for TILA violations); *N. C. Freed Co., Inc. v. Board of Governors of Fed. Res. Sys., supra* (statutory liens to be included within TILA definition of "security interest" and incorporated in home repair contract). Thus, the TILA disclosure requirements and penalties became an implied term of the contract between CFS and Taylor. Because the duty to disclose credit terms is an integral part of the loan agreement, the TILA counterclaim arises out of the same transaction as the underlying debt.

Our dissenting colleague, Justice Schreiber, begins with the correct assertion that a TILA violation does not affect the validity or enforceability of the underlying loan contract. 15 *U.S.C.A.* § 1610(d) (1974). From that premise, the dissent suggests that a recoupment defense based on a TILA violation does not arise out of the same transaction as the claim for the debt. The fallacy of the dissent in this respect is its failure to recognize that a recoupment defense does not invalidate the plaintiff's claim, but merely reduces the amount that the plaintiff may recover on that claim. That a TILA recoupment defense reduces the amount due on a loan to nothing does not alter the fact that recoupment reaches that result not by invalidating the loan, but by reducing the amount due. In brief, the assertion that a TILA violation under section 1610(d) does not invalidate a loan is irrelevant in determining whether or not the

defense of recoupment is available. *Household Fin. Corp. v. Pugh, supra*, Minn., 288 *N.W.2d* at 706 n.8.

In further support of the notion that a TILA violation does not arise out of the same transaction as the claim for the debt, the dissent argues that the creditor's suit is based on a contract and the debtor's defense on a statute. As indicated previously, however, the TILA disclosure requirements are implied terms of the loan contract. In its failure to recognize that fact, the dissent ignores the fundamental purpose of recoupment, which is the examination of a transaction in all its aspects to achieve a just result. *Rothensies v. Electric Battery Co., supra*, 329 *U.S.* at 299, 67 *S.Ct.* at 272.

## IV

■ The next question is whether 15 *U.S.C.A.* § 1640(h) (Supp.1981) precludes the assertion of a TILA counterclaim after the expiration of the one-year limitations period of section 1640(e). In effect, section 1640(h) prohibits a debtor from taking "any action to offset" the liability of a creditor for a TILA violation against the amount due the creditor, unless the creditor's liability has been reduced to judgment.

CFS contends that "any action to offset" encompasses a counterclaim for recoupment. We reject that contention. The phrase "any action to offset" does not refer to judicial proceedings, but to self-help actions by a debtor such as "deduct[ing] unilaterally from the amount he owes the amount of the civil penalty allegedly resulting from the Truth-in-Lending Act violations." *Lincoln First Bank of Rochester v. Rupert*, 60 *A.D.2d* 193, 400 *N.Y.S.2d* 618, 621 (App.Div.1977) (citations omitted) (summary judgment for bank reversed because borrower should have been permitted to assert counterclaim for TILA violation more than three years after contract signed). The purpose of the statute is to require a debtor to obtain a judicial determination of damages before making a deduction for TILA violations. An action brought by a creditor on the debt serves the purpose

of bringing the matter before the court. *Stephens v. Household Fin. Corp., supra,* 566 *P.*2d at 1166; *Household Fin. Corp. v. Pugh, supra,* Minn., 288 *N.W.*2d at 706.

Furthermore, legislative history supports the conclusion that section 1640(h) is not a bar to a counterclaim for recoupment. *S.Rep.No.* 278, 93d Cong., 1st Sess. 16 (1973). Indeed, a recent amendment states expressly that section 1640(h) does not bar a TILA counterclaim in an action to collect the amount due from a consumer. 15 *U.S.C.A.* § 1640(h) (Supp.1981), *as amended by* Pub.L. No. 96–221. That amendment, passed in March 1980, will take effect on April 1, 1982. The Senate Report that accompanied the proposed amendment states:

> [S]ection 130(h) is amended to state explicitly that an action under the act by a consumer who is then in default of the underlying obligation is not, by itself, a prohibited offset. [*S. Rep. No.* 368, 96th Cong., 1st Sess. 32 (1979)] U.S.Code Cong. & Admin.News 1980, pp. 236, 268.

We conclude that the history and purpose of the TILA confirm that section 1640(h) was amended to clarify existing law rather than modify it.

## V

CFS maintains that recoupment is precluded because the TILA, which creates rights not known at common law, limits the time within which actions may be brought to enforce those rights. Therefore, CFS argues that the expiration of the period of limitations not only bars the remedy, but also extinguishes the substantive right. *See The Harrisburg v. Rickards,* 119 *U.S.* 199, 7 *S.Ct.* 140, 30 *L.Ed.* 358 (1886) (expiration of state wrongful death statutes limits both the remedy and right to recover); *Danzer & Co. v. Gulf & Ship Island R. Co.,* 268 *U.S.* 633, 636, 45 *S.Ct.* 612, 613, 69 *L.Ed.* 1126 (1925) (once such a limitations period expires, it is "as if liability had never existed"). By contrast, expiration of a "remedial" or "procedural" statute of limitations bars only the remedy.

More recent decisions, however, have abandoned this formalistic approach in favor of an analysis of legislative intent. In

*Midstate Horticultural Co. v. Pennsylvania R. Co.*, 320 *U.S.* 356, 64 *S.Ct.* 128, 88 *L.Ed.* 96 (1943), the Court succinctly framed the modern view:

> Origin of the right is not per se conclusive whether the limitation of time 'extinguishes' it or 'merely bars the remedy' with the accepted alternative consequences respecting waiver. Source is merely evidentiary, with other factors, of legislative intent whether the right shall be enforceable in any event after the prescribed time, which is the ultimate question. [*Id.* at 360, 64 *S.Ct.* at 130 (interpreting Interstate Commerce Act)]

No longer is extension of a limitations period predicated upon classification of the statute as "substantive" or "procedural." *Burnett v. New York Central R. Co., supra*, 380 *U.S.* at 426–427, 85 *S.Ct.* at 1053–54. Rather, the inquiry is whether "tolling the limitation in a given context is consonant with the legislative scheme." *American Pipe and Construction Co. v. Utah*, 414 *U.S.* 538, 558, 94 *S.Ct.* 756, 768, 38 *L.Ed.2d* 713 (1974).

The question, thus, is whether congressional policy will be thwarted by allowing the defense of recoupment. Phrased otherwise, the issue is whether Congress intended the one-year period of limitations to apply not only to affirmative claims, but also to counterclaims for recoupment. *See United States v. Western R. R. Co.*, 352 *U.S.* 59, 72–73, 77 *S.Ct.* 161, 169–70, 1 *L.Ed.2d* 126 (1956).

In ascertaining congressional intent, we begin with an examination of the conditions that led to the enactment of the TILA. Before the TILA, borrowers were confronted with a thicket of divergent and sometimes fraudulent lending practices. Frequently those consumers with the most compelling need for credit became the victims of their own lack of commercial sophistication and of sharp practices of lenders. By requiring disclosure of credit terms and hidden costs, the TILA cut a path to guide the consumer to an informed use of credit. Congress hoped that consumers would compare the costs of credit and make meaningful decisions before borrowing. *Mourning v. Family Publications Service, Inc., supra*, 411 *U.S.* at 363–365, 93 *S.Ct.* at 1657–58. Accordingly, the TILA has been described as a remedial statute to be construed liberally to effectuate legisla-

tive intent. *Public Loan Co. v. Hyde, supra*, 47 *N.Y.*2d at 186, 417 *N.Y.S.*2d at 241, 390 *N.E.*2d at 1165.

Although the purpose of the one-year period of limitations is not clear from the legislative history, permitting a counterclaim for recoupment is consistent with the general policy of the TILA. *Household Fin. Corp. v. Pugh, supra*, Minn., 288 *N.W.*2d at 707; *Household Consumer Discount v. Vespaziani, supra*, 490 *Pa.* at 223 n.14, 415 *A.*2d at 696–697 n.14. Several courts have noted that to bar the defense of recoupment on the ground of the statute of limitations would frustrate the policy of the Act. Creditors could intentionally delay bringing suit to escape the consequences of non-disclosure. *See, e. g., Household Fin. Corp. v. Hobbs, supra*, 387 *A.*2d at 200; *Household Fin. Corp. v. Pugh, supra*, Minn., 288 *N.W.*2d at 707; *Lincoln First Bank of Rochester v. Rupert, supra*, 60 *A.D.*2d at 197–98, 400 *N.Y.S.*2d at 620; *Continental Acceptance Corp. v. Rivera, supra*, 50 *Ohio App.*2d at 347–48, 363 *N.E.*2d at 778; *Household Consumer Discount v. Vespaziani, supra*, 490 *Pa.* at 222, 415 *A.*2d at 696.

In the present case, the lender has brought before the Court the very transaction from which the debtor's counterclaim arises. As previously indicated, under both federal and New Jersey law the recoupment defense retains vitality if the main action is timely. We hold that the survival of the recoupment defense in this context comports with the fundamental policy of the statute of limitations. Creditors are still protected against affirmative recoveries under the TILA after expiration of the one-year period. Only the creditor who invokes the power of the court will be confronted by a recoupment defense arising from its own failure to comply with the TILA. Comment, "Truth in Lending and the Statute of Limitations," 21 *Vill.L. Rev.* 904, 927 (1976) ("In other words, while suits instituted more than 1 year following the violation are barred, claims raised by way of recoupment to an action already before the court are not subject to the Act's statute of limitations").

Last year Congress amended section 1640(e) by adding the following sentence:

This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set off in such action, except as otherwise provided by State law. [15 U.S.C.A. § 1640(e) (Supp.1981), as amended by Pub.L. No. 96–221]

That amendment, effective April 1, 1982, clarifies existing law by stating expressly that a debtor may assert a violation of the TILA as a recoupment defense although an action on the debt is brought more than one year after the TILA violation. Thus, our decision is consistent with the recent amendment to section 1640(e), the history and purpose of the TILA, and the clear majority of state and federal cases.

For the preceding reasons, we reverse and remand the matter for trial in accordance with this opinion.

SCHREIBER, J., dissenting.

Irrespective of whether the debtor's claim is labeled as a recoupment or setoff, the determinative issue is the meaning of subsection 1640(e) of the Truth in Lending Act, 15 U.S.C.A. § 1601 et seq.[1] Section 1640 generally provides that a creditor

---

[1]The majority's assumption that a debtor's claim predicated on violation of the Truth in Lending Act is a defense in the nature of recoupment against a creditor's suit for monies loaned based on a note or loan agreement is a misconception of the doctrine. Once it is realized that the plaintiff's claim is grounded on an express provision promising the repayment of money loaned and the other on a statute governing disclosure of the terms of the loan, it becomes apparent that the statutory claim is a setoff.

To raise a recoupment defense a defendant must assert that the plaintiff has violated an obligation under the same contract involving the *very* claim asserted upon which plaintiff's claim is dependent. When the contract involves mutual obligations of both parties, recoupment is permissible only when those obligations are mutually dependent. See *In re Hoffman*, 63 *N.J.* 69, 83–84 (1973) (Chief Justice Weintraub concurring); 20 *Am.Jur.2d, Counterclaim, Recoupment and Setoff*, § 11 (1965). To illustrate, if a seller of goods sues to recover the contract price, then the buyer may seek to defeat or reduce the claim by asserting that the goods delivered were defective. On the other hand, if the seller violated a provision in the same contract calling for him to give advance notice of any future price increases, the buyer could not raise such violation in defense of the claim for the price of goods already delivered. The notice covenant is independent of and not

who fails to comply with any requirement of the act with respect to a borrower is liable to that person for actual damages plus (1) twice the amount of any finance charge or if in connection with a consumer lease 25% of the total amount of monthly payments, up to a maximum of $1,000 and (2) costs of the action together with a reasonable attorney's fee. Subsection (e) then states:

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction within one year from the date of the occurrence of the violation.

This language clearly expresses the intent that the borrower has an affirmative claim for the items specified provided he asserts the claim within one year. Moreover subsection 1610(d) provides that the borrower's claim under subsection 1640(a) does not affect the validity or enforceability of any contract or obligation. This provision is supportive of the proposition that the debtor's claim is separate and affirmative.

The disclosure provisions set forth in the Truth in Lending Act and in Regulation Z, 12 *C.F.R.* § 226.1 *et seq.*,[2] are very complicated and demanding, and a creditor's failure to comply exactly with the provisions need not be intentional, or cause actual damages to give rise to liability, 15 *U.S.C.A.* § 1640(a)(2). The most likely explanation therefore for Congress instituting the brief one year limitation period was an intent to mitigate the harshness of holding a lender responsible indefinitely for

---

related to the sale of the goods. Similarly, the lender's obligation to comply with the Truth in Lending Act, even if considered part of the loan contract, and the obligation of the buyer to repay monies loaned, are independent obligations and therefore the borrower should not be able to assert Truth in Lending violations as a recoupment defense in an action for repayment of the loan.

[2] The Regulation was promulgated by the Federal Reserve Board which administers the Truth in Lending Act. 15 *U.S.C.A.* § 1604. Other administrative agencies including the Federal Home Loan Bank Board, the National Credit Union Administration, the Interstate Commerce Commission, the Federal Trade Commission and others are also obligated to enforce the act. 15 *U.S.C.A.* § 1607.

harmless violations. See Comment, "Truth in Lending and the Statute of Limitations," 21 *Vill.L.Rev.* 904, 921 (1976).

The circumstances of this case are illustrative. The defendant does not claim that plaintiff's violation induced him to enter into a loan agreement which he might not otherwise have made, or caused him any actual damages. The asserted violation is the plaintiff's failure to describe adequately its security interest. The loan agreement purported to take a security interest in defendant's after-acquired property, without noting that under the Uniform Commercial Code such security interest is limited to property acquired within ten days of the extension of credit. Existence of this Truth in Lending Act violation does not undermine the basic fairness of the plaintiff's claim for repayment of its loan. Permitting defendant a setoff amounts to nothing more than a windfall for a defaulting debtor who has had the benefit of the loan.

The claim that enforcement of the act would be weakened if section 1640 claims could not be utilized beyond the one year period is not substantial when consideration is given to the fact that criminal sanctions, 15 *U.S.C.A.* § 1611, and actions by those administrative agencies, 15 *U.S.C.A.* § 1607, which are charged with enforcing the act, are not subject to the one year limitation. Restricting the right of a consumer to seek recovery from a creditor reflects an intent to balance the goals of encouraging compliance without unfairly penalizing legitimate creditors.

Lastly, Congress recently amended subsection 1640(e) to allow counterclaims in this situation by permitting a person to assert a violation of the act "in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action . . . ." The amendment is to become effective April 1, 1982. 94 *Stat.* 185. Contrary to congressional intent, the majority has made the amendment effective immediately.

I would affirm the judgment of the Appellate Division.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, HANDLER and POLLOCK—6.

*For affirmance*—Justice SCHREIBER—1.