**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0249-16T2

THE BANK OF NEW YORK MELLON
f/k/a THE BANK OF NEW YORK,
AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE
CWALT, INC., ALTERNATIVE
LOAN TRUST 2007-24 MORTGAGE
PASS-THROUGH CERTIFICATES,
SERVICES 2007-24,

      Plaintiff-Respondent,

v.

JOHN KINGSBURY, his heirs,
devisees and personal
representatives and his, her, or
any of their successors in right,
title, and interest; GLENN MICHAEL
KINGSBURY; MRS. GLENN MICHAEL
KINGSBURY, his wife; MRS. JOHN
KINGSBURY, his wife; SUSAN E.
KINGSBURY, n/k/a SUSAN E. DANSON,

      Defendants-Appellants,

and

STATE OF NEW JERSEY; UNITED STATES
OF AMERICA,

      Defendants.

_____

Argued May 1, 2018 — Decided July 13, 2018

Before Judges Hoffman and Mitterhoff.

On appeal from Superior Court New Jersey, Chancery Division, Ocean County, Docket No. F-012351-15.

Mark G. Schwartz argued the cause for appellants (Cooper Levenson, PA, attorneys; Howard E. Drucks and Jennifer B. Swift, on the briefs).

Eugene R. Mariano argued the cause for respondent (Parker McCay, PA, attorneys; Eugene R. Mariano, of counsel and on the brief).

PER CURIAM

In this mortgage foreclosure action, defendant Glenn Kingsbury[1] appeals from an August 5, 2016 final judgment entered by the Chancery Division, following the court's grant of summary judgment in favor of plaintiff, The Bank of New York Mellon, on April 29, 2016.[2] On appeal, defendant challenges the trial court's

---

[1] On February 5, 2012, the mortgagor, John Kingsbury (decedent), passed away. On June 22, 2012, the Atlantic County Surrogate issued Letters Testamentary to defendant, decedent's son, confirming his appointment and qualification as executor of his father's estate. For ease of reference, we refer to John Kingsbury as decedent and his son, Glenn Kingsbury, as defendant.

[2] The notice of appeal refers only to the August 5, 2016 final judgment. However, defendant's Appellate Division Civil Case Information Statement identifies the underlying summary judgment order as the order he seeks to appeal. Both parties have fully briefed the court's decision granting summary judgment. In the interest of justice, we deem the appeal properly taken from the summary judgment order.

rejection of his claim that decedent was the victim of predatory lending, in violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210. For the following reasons, we reverse and remand.

I

On March 20, 2007, decedent, then seventy-two years old, executed a Real Estate Contract (Contract) for the purchase of a beachfront home in Beach Haven. The Contract provided for a sale price of $1,775,000, a deposit of $1000, an additional deposit of $126,500 within ten days of the signing of the Contract, and a contingency of buyer obtaining a mortgage of $1,597,500. The Contract did not reference a second mortgage.

The record indicates the closing for the purchase took place on June 8, 2007. On that date, decedent executed an Interest Only Fixed Rate Note (Note) in favor of Countrywide Home Loans, Inc. (Countrywide) for $1,420,000, along with a corresponding mortgage. The Note provided for a thirty-year term, with monthly payments of $9319 for the first 120 months and $11,767 thereafter. Decedent also executed a Uniform Residential Loan Application (Loan Application) on the same day. The Loan Application states decedent was the self-employed owner of Cheer Tech for ten years and two months and had a monthly income of $30,000, composed of a base income of $25,000 and a pension of $5000. It further listed a

contract sales price of $1,775,000, subordinate financing of $177,500, earnest money of $177,500, and a loan amount of $1,420,000. Also on June 8, 2007, decedent executed a HUD-1 Uniform Settlement Statement, which listed earnest money of $177,500, a principal loan amount of $1,420,000, and a second mortgage of $177,050.

Plaintiff's file regarding decedent's loan contained two additional documents. First was an April 30, 2007 letter decedent allegedly wrote "to explain inquiries on my credit report"; apparently, "[d]ue to the size of the mortgage," decedent had contacted other lenders. Decedent also allegedly wrote, "I am retired," but "bought into the business Cheer Tech in 1997 . . . . ." Second was a May 14, 2007 letter from an employee of H&R Block stating, decedent "has filed as owner of Cheer Tech . . . since 1997. I have been preparing his taxes for the last twelve years."

On September 1, 2010, decedent stopped making the monthly mortgage payments, constituting a default that he never cured. On June 1, 2011, Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide, assigned the mortgage to plaintiff. As noted, decedent passed away on February 5, 2012. A title search

revealed a second mortgage for $177,500[3] in favor of Countrywide that was discharged on September 26, 2012.

On August 22, 2014, plaintiff sent a notice of intent to foreclose to decedent's estate. Plaintiff filed an amended foreclosure complaint on June 30, 2015 against decedent's estate and heirs. Defendant answered on September 9, 2015, alleging the CFA barred plaintiff's claims due to Countrywide's fraudulent actions, including material misrepresentation of decedent's income on the loan application.

On February 18, 2016, plaintiff filed a motion for summary judgment. On April 27, 2016, defendant filed opposition to plaintiff's motion, arguing the court should hold plaintiff responsible for Countrywide's fraudulent actions in issuing the loan. Defendant also asserted plaintiff frustrated his right to conduct meaningful discovery.

On April 29, 2016, the trial court heard oral argument on plaintiff's motion for summary judgment. The court initially noted that plaintiff is not a holder in due course because the assignment of the note and mortgage to plaintiff occurred after the loan went into default; as a result, plaintiff is "subject to

---

[3] We assume this second mortgage represents the same second mortgage reflected on the settlement sheet, which lists a second mortgage of $177,050. This discrepancy constitutes another issue for the parties to address when they complete discovery.

the defenses that are relevant." Plaintiff's counsel did not dispute this point. Defendant requested further discovery and argued Countrywide defrauded decedent. Plaintiff argued it met the standard for summary judgment because decedent signed all of the loan documents and defendant failed to establish fraud or other wrongful conduct by Countrywide.

The motion court found plaintiff established a prima facie right to foreclose, concluding defendant failed to raise any genuine issues of material fact. The court specifically found defendant's fraud claim "untenable." The court also noted the statute of limitations barred defendant from asserting a fraud claim. Furthermore, the court found decedent's failure to raise a fraud claim at the time of the transaction, and the loan payments he made for the next three years, ratified the note and mortgage. The court further found the opposing certification of defendant "unpersuasive," dismissing it as "clearly hearsay and speculation." The court then granted plaintiff's motion, concluding defendant had "not met [his] burden for opposing . . . summary judgment . . . ."

On appeal, defendant argues the motion court erred in failing to allow discovery, and in denying "the right to seek equitable remedies." We agree.

6                                                          A-0249-16T2

We review a grant of summary judgment de novo, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Without making credibility determinations, the court considers the evidence "in the light most favorable to the non-moving party" and determines whether it would be "sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

The CFA authorizes a suit by "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . ." N.J.S.A. 56:8-19. Thus, "[t]o prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Zaman

v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)).

The CFA defines an "unlawful practice" as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . ." N.J.S.A. 56:8-2. An "unconscionable commercial practice" suggests a standard of conduct lacking in "good faith, honesty in fact and observance of fair dealing." Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994) (quoting Kugler v. Romain, 58 N.J. 522, 544 (1971)).

Predatory lending may constitute unconscionable commercial practice under the CFA. See Assocs. Home Equity Servs., Inc. v. Troup, 343 N.J. Super. 254, 278-79 (App. Div. 2001). Predatory lending is:

> a mismatch between the needs and capacity of the borrower . . . . In essence, the loan does not fit the borrower, either because the borrower's underlying needs for the loan are not being met or the terms of the loan are so disadvantageous to that particular borrower that there is little likelihood that the borrower has the capability to repay the loan.

[Nowosleska v. Steele, 400 N.J. Super. 297, 305 (App. Div. 2008) (alteration in original) (quoting Troup, 343 N.J. Super. at 267).]

Here, whether decedent's loan application contained material false information, and if so, Countrywide's complicity in creating and approving such a fraudulent application, constitute material facts in dispute. Defendant contends: decedent never owned or worked for Cheer Tech, rather defendant owns the business; decedent's monthly income at the time of loan origination was approximately $1500, not $30,000; the April 30, 2007 letter regarding decedent's credit report contains a forged signature;[4] and H&R Block never filed Cheer Tech's tax returns. Defendant submitted a certification attesting to those facts. Viewed in the light most favorable to defendant, those facts clearly establish a material dispute as to whether Countrywide engaged in unlawful conduct proscribed by the CFA. See Brill, 142 N.J. at 540. We discern no basis for the motion court's rejection of defendant's certification as "clearly hearsay and speculation."

Furthermore, defendant contends Countrywide misrepresented decedent as providing earnest money, when the money actually came from a second mortgage from Countrywide; inexplicably, this

---

[4]    The signature on the April 30, 2007 letter does appear substantially different from the signature on the Note, the mortgage, the Loan Application, and the Settlement Statement.

mortgage was discharged shortly after decedent's death. We also question whether the loan application decedent allegedly signed on the date of settlement was the same application he signed when he applied for the loan. The application signed on the date of closing listed as an asset his "DOWNPAYMENT" of $177,500, but did not list any liabilities, except for an unpaid credit card balance of $29. Since Countrywide provided almost the entire amount of the down payment via a second mortgage, it obviously knew the application submitted to decedent at closing contained material false information. Allowing defendant to complete discovery should yield a full explanation of the facts and circumstances surrounding the second mortgage, its discharge, and the degree of Countrywide's involvement in the creation or submission of falsified documents.

Accordingly, we find the trial court erred when it determined the record showed no material facts in dispute regarding Countrywide's conduct and whether it engaged in an unlawful practice in violation of the CFA. We therefore reverse the grant of summary judgment and remand to allow the parties to complete discovery. Because the court entered its final judgment based upon the order granting summary judgment, we also vacate the final judgment.

A-0249-16T2

The trial court also found the statute of limitations bars defendant's CFA defense. However, we find the doctrine of equitable recoupment saves the defense.

We agree the statute of limitations bars defendant from pursuing an action under the CFA. The statute of limitations for the CFA is six years. N.J.S.A. 2A:14-1; Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 170 (App. Div. 2007) (citing Mirra v. Holland Am. Line, 331 N.J. Super. 86, 90-91 (App. Div. 2000)). Decedent signed the note and mortgage on June 8, 2007. Assuming decedent knew of the fraud at that time, the statute of limitations began to run. Defendant asserted a claim of fraud in his answer to plaintiff's complaint on September 9, 2015, more than eight years after the loan origination. However, defendant asserted the claim as a defense, not as a counterclaim. The doctrine of equitable recoupment permits a defendant to assert an otherwise stale claim and avoid the statute of limitations, where the defendant uses the claim as a shield instead of a sword. Nester v. O'Donnell, 301 N.J. Super. 198, 208 (App. Div. 1997) (citing Midlantic Nat'l Bank v. Georgian Ltd., 233 N.J. Super. 621, 625 (Law Div. 1989)).

A defendant may raise an equitable recoupment defense in order to reduce the plaintiff's recovery in a foreclosure action

when the defendant claims fraud arising from the loan origination. Troup, 343 N.J. Super. at 271 (citing Beneficial Fin. Co. of Atl. City v. Swaggerty, 86 N.J. 602, 611 (1981)). "[J]udges invented the doctrine of equitable recoupment in order to avoid an unusually harsh or egregious result from a strict application of a statute of limitations." Ibid. (quoting Georgian Ltd., 233 N.J. Super. at 625-26). Therefore, "the defense of recoupment 'is never barred by the statute of limitations so long as the main action itself is timely.'" Ibid. (quoting Nester, 301 N.J. Super. at 208).

Here, plaintiff argues the statute of limitations bars defendant's CFA defense. However, a strict application of the statute of limitations on the CFA defense would result in a gross injustice if Countrywide engaged in unlawful practices to defraud decedent during the loan process. We note the equitable recoupment defense does not invalidate the debt; it merely reduces the amount of plaintiff's recovery. Id. at 272. While plaintiff may still be entitled to foreclose, equitable recoupment may limit the recovery to the amount of the foreclosure sale and preclude any deficiency judgment against defendant. We remand to the trial court to allow the parties to complete discovery and determine an equitable result.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0249-16T2